**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) Case No. 11-40054-JAR |
| | ) |
| LAURA J. FISHER, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

**ORDER AND JUDGMENT**

**Appeal from the United States Magistrate Court**
**for the District of Kansas at Fort Riley, Kansas,**
**(MJ No. 10-10101)**

Defendant/Appellant Laura J. Fisher was charged by information under the Assimilative

Crimes Act, 18 U.S.C. § 13, with one count of driving under the influence ("DUI"), as prohibited

by K.S.A. § 8-1567(a)(3).  Fisher pled guilty and Magistrate Judge Karen Humphreys sentenced

her to 6 months' imprisonment.  Fisher appeals her conviction and sentence on the basis that

Judge Humphreys should have recused herself in this matter.  This Court exercises jurisdiction

under 18 U.S.C. §§ 3402 and 3742(h) and affirms.

**I.     Background**

Fisher first appeared before Judge Humphreys on January 6, 2011.  At the Rule 5

hearing, Fisher informed the court that she lives in Tennessee and they discussed travel

arrangements for her court appearances.  The government informed the court at this time that a

journal entry of conviction showed that appellant was previously convicted of vehicular

homicide in an alcohol-related incident.  Fisher told the court that she was regularly attending

Alcoholics Anonymous meetings and that she would be receiving counseling.  The court

encouraged Fisher: "Well, I'm happy for you and I think that those are hard steps but they are

real critical steps and obviously that will influence the future here too."  Judge Humphreys

imposed bond without pretrial supervision and concluded the hearing by thanking the parties and

told defendant to "[c]ontinue with your hard work."

    Fisher pled guilty without a plea agreement on March 17.  The factual basis of

the guilty plea is as follows:

> On September 25th, 2010, at Fort Riley, Kansas, Laura
> Fisher drove her vehicle to the Trooper Gate entrance to Fort
> Riley, running over a traffic cone and driving past the yellow
> traffic barrier.  The military police stopped the defendant's vehicle
> and detected the smell of alcohol.  A series of field sobriety tests
> were then conducted, indicating multiple signs of impairment.  The
> defendant later submitted to an Intoxilyzer 8000 test that resulted
> in blood alcohol content of .109 over the legal limit.

Under K.S.A. § 8-1567(d), a defendant may be sentenced to no less than 48 hours and no

more than 6 months' imprisonment for the first conviction under the statute.  A Presentence

Investigation Report ("PSR") was prepared and completed on May 9, 2011.  It noted one prior

criminal conviction in Fisher's criminal history: a conviction on November 30, 2007 for driving

the wrong way on a divided highway, transporting an open container, and vehicular homicide.

The factual basis for that conviction was included, detailing the events of October 3, 2006, when

Fisher was traveling the wrong way on I-70 in Junction City, Kansas and stuck a vehicle driven

by Bryan Jobe head-on.  Jobe later died from injuries he sustained in that accident.  Fisher was

sentenced to a fine and six months in county jail for the open container offense, to be served

concurrently with 12 months in county jail for the vehicular homicide offense.  She served two

months of her term before being granted a work release and was released six months later to 12

months of probation.  As is customary, the PSR also included personal data regarding the

appellant and her struggle with alcoholism.  Fisher admitted to using alcohol on November 22,

2010, after the offense in this case, but before her initial appearance.

After the PSR was completed, the government filed a Notice of Intent to Introduce

Evidence, citing the following witnesses it anticipated calling at the sentencing hearing: (1)

Bridget Jobe, Bryan Jobe's mother; and (2) Steve Opat, the Geary County Attorney who

prosecuted defendant's vehicular homicide case.  The government stated that it intended to use

both witnesses' testimony to argue for a harsher sentence than would normally be imposed for a

Class B DUI charge.  Appellant objected to this evidence.  The government filed a second Notice

of Intent to Introduce Evidence, attaching a letter written by Bridget Jobe, summarizing the facts

of the vehicular homicide case, how her son's death affected her, and the preventable nature of

drunk driving accidents.  She was concerned that appellant had not changed since the 2006

accident.  She asked that Judge Humphreys "remember Bryan Tyler Jobe as you sentence Laura

Fisher.  I ask that you make sure that she is not able to continue drinking and driving and putting

our children in danger."

Appellant filed a sentencing memorandum and urged the court to sentence at the lower

end of the statutory range, followed by a period of supervision based on the factors set forth in

18 U.S.C. § 3553(a).  Appellant highlighted: (1) the mitigating circumstance relating to

offense—cooperation with officers during the stop and a relatively low blood alcohol level; (2)

her acceptance of responsibility; (3) her lack of criminal history other than the vehicular

homicide; and (4) her efforts at addressing her alcoholism.  Appellant argued that the Court must

not only consider her prior offense, but should consider all of the circumstances of this offense

and her background.  The government argued that appellant had failed to rehabilitate herself

after the prior offense and argued that the statutory maximum sentence was necessary in order to

promote incapacitation and specific deterrence.

After a long dialogue at the sentencing hearing with defendant's counsel and defendant,

Judge Humphreys announced the sentence, which included the statutory maximum term of 6

months' imprisonment.  In announcing this sentence, Judge Humphreys explained:

> I think it's apparent that today is an important day for those
> of us that are present, those of us who have an interest in the case
> of United States versus Laura Fisher.  And I think it's very
> important that you understand that I have been a judge since 1987,
> that I have sentenced scores of cases, I could probably say
> hundreds but I can't be absolutely sure of that but I'm reasonably
> confident.  And some cases are easier to sentence then others, and I
> don't know why that is, but this is not an easy case for sentencing.
> There are some very strong competing interests.  And I hope that
> since you're going to be the one most affected by my decision
> today, that you will have a chance to appreciate that you were
> sentenced by a judge who is 63 years old, who has been a judge
> since 1987, who has served  for several years as a judge,
> specifically in the area of driving and drinking, and a judge, and I
> think you deserve to know this, Ms. Fisher, whose youngest
> brother was the victim of a hit-and-run drunk-driving accident that
> caused his death; and that happened in 1988, a long time ago.
> And, as you would expect, our family was changed by that
> experience. And I have often examined myself in sitting in
> judgment of whether or not I have been unreasonably influenced
> by life.  And my answer to that question is absolutely not.  The
> influence that it's had on me is just what Mr. Bartee has been
> arguing for, is to realize that you cannot judge on the surface of
> things.  You have to have a complete understanding of a person's
> history and background before rendering a Judgment.  And so I
> don't look upon every person convicted of driving under the
> influence of alcohol as the person who probably ran over my
> brother, who was trying to get off his bicycle at midnight one
> night.  Okay?

> Now, I don't talk about this comfortably or easily but because of some of the arguments that have been made I felt it would be helpful to understand and to place before you the facts of my context as I approach the assignment of imposing sentence in a difficult case.

Judge Humphreys proceeded to discuss the sentencing factors under § 3553(a) and found that a 6-month sentence is sufficient but not greater than necessary to serve those factors.

## II.     Analysis

On appeal, Fisher challenges Judge Humphreys decision not to recuse herself sua sponte on the basis of her personal background. Fisher contends that the fact that Judge Humphreys lost her brother in a drunk driving accident gives rise to an appearance of partiality in this case given Fisher's previous conviction for vehicular homicide, committed while Fisher was under the influence of alcohol.[1]

Review of the denial of a motion for recusal is evaluated under an abuse of discretion standard of review.[2] There was no motion to recuse filed below, however, because the basis for defendant's claim of impartiality was not disclosed until immediately prior to Judge Humphreys' imposition of the sentence. The parties agree that an abuse of discretion standard also applies to a court's decision not to sua sponte recuse itself under these circumstances.[3]

---

[1]Fisher's counsel conceded at oral argument that the basis for the recusal motion is not that Judge Humphreys' background calls into question her impartiality in every DUI case, but in this particular case given Fisher's prior conviction.

[2]*E.g.*, *United States v. Greenspan*, 26 F.3d 1001, 1004 (10th Cir. 1994).

[3]*Cf. United States v. Pearson*, 230 F.3d 1243, 1276–77 (10th Cir. 2000) (considering recusal issue for the first time on appeal where district judge's comments were made at the sentencing hearing).

28 U.S.C. § 455(a)[4] provides that a judge "shall disqualify [herself] in any proceeding in

which [her] impartiality might reasonably be questioned."[5]  The standard for recusal under

section 455(a) is not subjective, but rather objective.[6]  The district court considers "whether a

reasonable person, knowing all of the relevant facts, would harbor doubts about the judge's

impartiality."[7]  And the judge has a "'continuing duty to ask himself what a reasonable person,

knowing all of the relevant facts, would think about his impartiality.'"[8]  As the Supreme Court

explained in *Liljeberg v. Health Care Services Acquisition Corp.*,[9] "[t]he goal of section 455(a)

is to avoid even the appearance of partiality."[10]

In considering a motion to recuse pursuant to section 455(a), "the initial inquiry is

whether a reasonable factual basis exists for questioning the judge's impartiality."[11]  This inquiry

is limited to outward manifestations and the reasonable inferences to be drawn from those

manifestations.[12]  Thus, "the judge's actual state of mind, purity of heart, incorruptibility, or lack

---

[4]The Kansas Code of Judicial Conduct is incorporated into this district's local rules by D. Kan. Rule 83.6.1. Rule 2.11 states: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

[5]28 U.S.C. § 455(a).

[6]*See Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988) and *Liteky v. United States*, 510 U.S. 540, 548 (1994)).

[7]*Id*. at 350-51 (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)).

[8]*Greenspan*, 26 F.3d at 1005 (quoting *United States v. Hines*, 696 F.2d 722, 729 (10th Cir. 1982)).

[9]486 U.S. 847 (1988).

[10]*Id*. at 860.

[11]*Nichols*, 71 F.3d at 351 (citing *Cooley*, 1 F.3d at 993).

[12]*Id.* (citing *Cooley*, 1 F.3d at 993).

of partiality are not the issue."[13]  The inquiry is "extremely fact driven."[14]

The Tenth Circuit has cautioned that "section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."[15]  This is so, for "a judge has as strong a duty to sit when there is no legitimate reason to recuse as [she] does to recuse when the law and facts require."[16]  Nor is section 455(a) intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice.[17]

Appellant argues that a reasonable lay person would harbor doubts about Judge Humphreys' impartiality after hearing her statement about her brother's tragic death, uttered almost immediately before imposing the maximum sentence of imprisonment in this case. Appellant focuses on the following factors that she claims evidence Judge Humphreys' bias in this case: (1) the government was successful in focusing attention on the victim impact of the prior offense; (2) the government argued and the court appeared to agree that the vehicular homicide sentence was unduly lenient; and (3) Judge Humphreys' statement about her brother was made immediately before she imposed sentence.

The government responds that a reasonable lay person would not have any doubt about Judge Humphreys' impartiality under the totality of circumstances in this case.  The government

---

[13]*Id.* (quoting *Cooley*, 1 F.3d at 993).

[14]*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 660 (10th Cir. 2002) (quotation omitted).

[15]*Cooley*, 1 F.3d at 993 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1234 (10th Cir. 1986)).

[16]*Nichols*, 71 F.3d at 351 (citing *United States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994)).

[17]*Cooley*, 1 F.3d at 993 (citation omitted).

focuses on (1) the factual dissimilarities between the 2006 incident with Fisher and the

circumstances surrounding the accident involving Judge Humphreys' brother; (2) the length of

time, 22 years, between the death of Judge Humphreys' brother and the time of sentencing in this

case; (3) the voluntariness of Judge Humphreys' disclosure about this experience at the hearing

and the impact it has had on her ability to impartially decide DUI cases; (4) Judge Humphreys'

kind and professional demeanor toward Fisher throughout the case, along with her prior

decisions in the case; (5) the reasons provided by Judge Humphreys' for the sentence, based on

the statutory sentencing factors; and (6) Judge Humphreys' statement on the record that her

family's experience with drunk driving had no impact on her ability to sit impartially on DUI

cases.

For substantially the same reasons identified by the government, the Court does not find

that Judge Humphreys abused her discretion in declining to sua sponte recuse herself in this case.

While it is true that few cases consider whether judges should recuse when they are victims of a

crime similar to the matter before them, the cases that do discuss this issue suggest a number of

relevant factors.[18]  In determining whether a reasonable person would question the judge's

impartiality, these cases consider factors such as the similarity of the incidents, whether the

alleged bias stems from an extrajudicial source, the judge's statements about the prior

experience, the time frame of the offense compared to the incident in the judge's background,

---

[18]*United States v. Zidar*, 178 F. App'x 673, 678 (9th Cir. 2006); *Strickler v. Pruett*, Nos. 97-29, 97-30, 1998 WL 340420 (4th Cir. June 17, 1998); *United States v. Sturman*, 951 F.2d 1466 (6th Cir. 1991); *Mann v. Thalacker*, No. C 95-3008, 1996 WL 33423405 (N.D. Iowa Oct. 9, 1996); *United States v. Luong*, No. CR. S-99-0433 WBS, 2008 WL 1970027 (E.D. Cal. May 2, 2008); *United States v. Robbins*, 48 M.J. 745 (A.F. Ct. Crim. App. 1998); *United States v. Fiat Motors of N.A.*, 512 F. Supp. 247 (D.D.C. 1981).

and the judge's impartiality in other stages of the litigation before him or her.[19]  The Court finds

that many of these factors are salient here and counsel against a finding that Judge Humphreys

abused her discretion by failing to sua sponte recuse herself under the applicable standards.

As an initial matter, the Court notes that the drunk driving accident that claimed the life

of Judge Humphreys' brother occurred in 1988, almost twenty-five years ago.  As described by

Judge Humphreys on the record, this accident was a hit and run that occurred while her brother

was riding a bicycle.  In contrast, Fisher's 2006 offense involved a head-on collision with

another vehicle and Fisher did not leave the scene of that accident.  The Court finds that the time

lapse between the death of  Judge Humphreys' brother and this case is significant and, coupled

with Judge Humphreys' comments on the record, shows that her impartiality could not

reasonably be questioned.  Judge Humphreys emphasized the amount of time that had passed

when disclosing this fact on the record, and explicitly referenced her frequent self-reflection

about this experience.  Judge Humphreys contends that this experience has made her a better

judge and has not unreasonably influenced her ability to impartially judge those charged with

driving under the influence offenses.

Fisher argues that the Court should not consider Judge Humphreys' statements about her

own impartiality, as this would allow a subjective standard to prevail, rather than the appropriate

---

[19]*Zidar*, 178 F. App'x at 678 (finding no abuse of discretion in declining to recuse and citing 20 year time lapse, as well as factual dissimilarities); *Strickler*, 1998 WL 340420 at *14 (declining to recuse and relying on time lapse, factual and legal dissimilarities); *Sturman*, 951 F.2d at 1482 (finding no error on appeal in district judge's failure to recuse, focusing on decisions in case by judge that fail to demonstrate bias); *Mann*, 1996 WL 33423405, at *8–10 (focusing on time lapse, factual dissimilarities, and statements by the judge that the experience did not influence his decision); *Robbins*, 48 M.J. at 754 (focusing on time lapse and the judge's statements); *Fiat Motors of N.A.*, 512 F. Supp. at 250–51 (declining to recuse based on failure of movant to identify an extrajudicial attitude or statement directed toward the movant, time lapse, and lack of nexus between judge's automobile accident and instant case involving automobile safety); *c.f. Luong*, 2008 WL 1970027, at *5 (acknowledging the factual dissimilarities between the crimes but referring to another judge for decision).

objective standard for determining whether a judge has a duty to recuse under § 455.  But the Court does not consider Judge Humphreys' statements as subjective evidence that she is impartial.  The Court accepts these statements instead as further evidence that the time gap between her experience with her brother and her role as a judge in this case would cause a reasonable lay person, knowing all of the relevant facts, to conclude that Judge Humphreys impartially decided that the statutory maximum sentence was appropriate in this case.  A reasonable lay person, aware of all relevant facts, including her statements on the record, would not doubt Judge Humphreys' impartiality.

Even though the alleged source of bias in the case is extrajudicial, the Court finds that Judge Humphreys' other statements on the record and decisions in this case demonstrate that her impartiality cannot reasonably be questioned.  Judge Humphreys was made aware of the prior conviction for vehicular homicide at Fisher's initial appearance.  Nonetheless, Judge Humphreys engaged in a sensitive and kind dialogue with Fisher, accommodated her travel for court appearances from her home in Tennessee, and encouraged her continued efforts at sobriety.  And during the sentencing hearing itself, Judge Humphreys engaged in a lengthy dialogue with Fisher about her struggle with alcoholism and her efforts at rehabilitation after the 2006 incident when Jobe was killed.  All of these statements, along with the fact that Judge Humphreys declined to impose pretrial supervision, and allowed for self-surrender, objectively evidence her impartiality in this case.

Fisher relies heavily on the fact that Judge Humphreys disclosed the circumstances of her brother's death immediately prior to sentencing her to the statutory maximum sentence.  But this argument fails to account for the context of Judge Humphreys' disclosure and the lengthy

recitation of factors she considered pursuant to 18 U.S.C. § 3553(a).  Judge Humphreys told

Fisher, "I want you to know, and your family since they are here today, that this is a sentencing

hearing that I have given considerable thought and reflection on.  I didn't just read the file and

walk into the courtroom today."[20]  The relevant sentencing factors require the sentencing judge

to consider, among other factors:

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for
> the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational
> training, medical care, or other correctional treatment in the most
> effective manner; . . . .[21]

Judge Humphreys considered the circumstances of the instant offense, which she stated

"must be viewed within the context of your criminal history."  Judge Humphreys considered the

history and characteristics of the defendant, which necessarily required her to consider Fisher's

criminal history.  Judge Humphreys also considered Jobe's letter to the court, as well as the fact

that Fisher continued to drink after the 2006 incident and after the instant offense.  Further,

Judge Humphreys explained that the sentence will "protect the public for a period of 6 months.

It will separate you from the community . . . and allow you an opportunity to thoughtfully and

carefully think about the lives that you have affected within your family and otherwise."  Judge

Humphreys proceeded to encourage Fisher to return to the community with a "joy for the gift

that life is, and . . . deliver this to your two precious children. . . .  That you will be a living,

---

[20]Doc. 7 at 23.

[21]18 U.S.C. § 3553(a).

breathing example of rehabilitation."

In sum, the Court has conducted a fact-driven inquiry and finds the record in this case convincingly establishes that Judge Humphreys did not abuse her discretion by failing to recuse herself sua sponte pursuant to 28 U.S.C. § 455(a).  This Court has considered Judge Humphreys' outward manifestations and the reasonable inferences to be drawn from those manifestations. Judge Humphreys' statements on the record, as well as her decisions in this case, would not cause a reasonable person to question her impartiality.  Instead, the record demonstrates that Judge Humphreys disclosed her personal experience with drunk driving out of an abundance of caution, in order to communicate to the parties that it did not unreasonably influence her decision in this case to impose the statutory maximum sentence of six months.  The length of time between Judge Humphreys' brother's death and this case was substantial and allowed for a lengthy period of reflection.  And importantly, there is no example in the record of Judge Humphreys giving undue weight to the fact of Fisher's prior conviction for vehicular homicide. Judge Humphreys' sentence was fully supported by the factors set forth in 28 U.S.C. § 3553(a). For all of these reasons, the Court **affirms** Fisher's conviction and sentence.

Dated: October 11, 2011

           S/ Julie A. Robinson
          JULIE A. ROBINSON
          UNITED STATES DISTRICT JUDGE